IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**MELODY RICHARDSON,** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 1:14-CV-222-SAA**

**COMMISSIONER OF SOCIAL SECURITY,** **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff Melody Richardson has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her Title II application for a period of disability (POD) and disability insurance benefits (DIB), as well as her Title XVI application for supplemental security income under the Social Security Act. Plaintiff protectively filed an application for benefits on September 20, 2011, alleging disability beginning on April 1, 2009. Docket 9, at 110, 112. The agency administratively denied the plaintiff's claim initially and upon reconsideration. Plaintiff then requested an administrative hearing, which an Administrative Law Judge (ALJ) held on July 8, 2013. *Id.* at 30. The ALJ issued an unfavorable decision on September 16, 2013 (*id.* at 11-29), and the Appeals Council denied plaintiff's request for a review on October 6, 2014. *Id.* at 5. Plaintiff timely filed the instant appeal from the decision and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

**I.    FACTS**

Plaintiff was born September 18, 1969; she was forty-three years old at the time of the ALJ hearing and thirty-nine years old at the time of the alleged onset date. *Id.* at 23,110. She

1

has a high school education and has completed some college, though she does not appear to have been awarded a degree. *Id.* at 35-36. She was previously employed as a teacher's aide and in various other forms of semi-skilled work such as retail cashiers and the like. Docket 9, p. 23.

After reviewing the record as a whole, including the evidence and testimony provided, the ALJ issued her unfavorable opinion on September 16, 2013. *Id.* at 11-24. Within that opinion, the ALJ determined that plaintiff had met the insured status requirement through September 30, 2012. *Id.* at 16. In evaluating the plaintiff's disability claim, the ALJ proceeded through the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. 404.1520(a); *see also* Docket 9, pp. 16-24. From that process, the ALJ determined that the claimant suffered from the "severe" impairments of "borderline[] mood disorder, personality disorder, dysthymic disorder, and paranoid personality," (Docket 9, p. 10), but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). Docket 9, p. 16-20. Further, the ALJ determined that the claimant also has "hypertension, obesity and diabetes mellitus" but that those impairments were non-severe because they do impose more than minimal limitations upon plaintiff's ability to work. *Id.* at 16.

Upon further analysis under the applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible because there were inconsistencies between plaintiff's medical reports and her claimed impairments, stated limitations and subjective complaints. *Id.* at 22. The ALJ similarly concluded that testimony from plaintiff's friend, Daphne Norton, warranted only some weight, and she credited the portion of Norton's information which showed that plaintiff's activities were not as limited as plaintiff alleged. *Id.* The ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to "perform a full range of work at all

2

exertion levels" but was limited to "simple repetitive tasks; . . . no interaction with the public and only occasional contact/interaction with coworkers and supervisors on a superficial level; and . . . to low stress jobs with no strict production quotas." *Id.* at 21. After evaluating all of the evidence in the record, including testimony from the plaintiff and a vocational expert, the ALJ held that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff can perform. *Id.* at 23. As a result, the ALJ concluded that plaintiff was not disabled under the Social Act. Docket 24.

The plaintiff claims the ALJ erred in (i) giving improper weight to the opinion of Dr. James Lane, an examining physician; (ii) improperly forming plaintiff's RFC by failing to account for a severe impairment in accordance with *Stone v. Heckler*, 852 F.2d 1099 (1985); (iii) "cherry picking" evidence that only supported the ALJ's position; and (iv) improperly considering the testimony of plaintiff's friend, Daphne Norton. Docket 14.

## II.  EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. The burden to prove disability rests upon plaintiff through the first four steps of the process and if plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999). First, the plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit [her] physical or mental ability to do basic work activities . . .." 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three the ALJ must conclude that the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the

impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the plaintiff does not meet this burden, at step four she must prove she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Finally, at step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education and past work experience, she is capable of performing other work. 20 C.F.R §§ 404.1520(g), 416.920(g). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is then given the chance to prove that she cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

### III.   STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence

are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV. DISCUSSION

### A. Did the ALJ properly consider Dr. Lane's opinion?

To begin, plaintiff asserts the ALJ improperly assessed Dr. James Lane's opinion. Docket 14, pp. 7-11. Plaintiff argues the ALJ should have given "great weight" to the opinion because it was "the only medical opinion given in this file by a medical professional that actually saw and examined the Plaintiff." By not doing so, say plaintiff, the ALJ reached an improper RFC which tainted the analysis going forward. Docket 14, p. 9. The court concludes, however, that rather than committing error, the ALJ's decision to assign Dr. Lane's opinion only "some weight" simply fell within the her role as fact-finder and complied with her duty to weigh inconsistencies in the evidence. Docket 15, p. 10.

Dr. Lane performed a consultative examination of plaintiff on December 7, 2011. Docket 9, pp. 312-17. He concluded that the plaintiff exhibited "Psychotic Disorder, NOS and a Personality Disorder, NOS, with Paranoid Personality Features," and he suggested ruling out "a Bipolar I Disorder, with Psychotic Features, Moderate Severity," indicating that he had some questions about this particular diagnosis. *Id.* He went on to find that the plaintiff was "not at all impaired in the area of performing routine, repetitive tasks," was "mild to moderately impaired

5

regarding her ability to maintain concentration and attention," and was "severely impaired in the area of interacting appropriately with co-workers and accepting supervision." *Id.* at 315.

After considering Dr. Lane's opinion, the ALJ determined that severe limitations were not warranted in light of the record as a whole and given that the evidence reflected that plaintiff was less than reliable. Docket 9, pp. 18-19. In detail, the ALJ found Dr. Lane's opinion was not always consistent with the record evidence. *Id.* at 19. For example, even though Dr. Lane had found the plaintiff severely limited from a social standpoint, he also noted that she got along pretty well with her family and had regular contact with personal friends. *Id.* at 19. In addition, Dr. Lane found "major deficits with [plaintiff's] concentration but determined she was not at all impaired in the area of performing routine, repetitive tasks." *Id.*

Contrary to plaintiff's assertion, Dr. Lane's consultative opinion was not the only medical record or diagnosis from an examining source; that particular argument is without merit. Both Dr. Masur and Dr. Cummings examined the plaintiff at separate times, and there are additional records from other medical professionals who examined the plaintiff throughout her medical history. Docket 9, at 353, 461; *see e.g.*, Docket 9, pp. 218-24 (Dr. Turner's treatment notes from North Mississippi Health Services), 294-99 (Dr. Ali's notes from treatment at Baptist Memorial Hospital). As such, the argument that Dr. Lane's opinion was entitled to great weight because he was "the only medical professional that actually saw and examine[d] the Plaintiff" is simply incorrect.

Nor did the ALJ err in assigning Dr. Lane's opinion limited weight. Rather, she simply operated within her role and in compliance with her duties as fact-finder. As fact-finder the ALJ has the sole responsibility for weighing the evidence. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The court may not reweigh the evidence or substitute its opinion for that of the

6

Commissioner. *Brown v. Apfel*, 192 F.3d 492, 496 (5tyh Cir. 1999). An "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995), quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057) (5th Cir. 1987). In this instance, the ALJ did not err by electing not to grant Dr. Lane's opinion significant weight. Because Dr. Lane was only a consultative examiner and not a treating physician, the ALJ was under no duty to either grant the opinion significant weight or perform a detailed analysis of the opinion under 20 C.F.R. § 404.1527(d)(2), as she would have been had Dr. Lane been a treating physician. *See Newton v.Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Despite the fact that Dr. Lane's opinion was not entitled to the deference typically reserved for treating physicians, the ALJ provided a detailed analysis of the entire medical record, which included Dr. Lane's opinion, and thoroughly discussed her decisions in weighing the evidence. Docket 9, pp. 16-27. As noted, the ALJ highlighted the inconsistencies which led her to only grant Dr. Lane's opinion only some weight. Docket 9, p. 19. By highlighting these inconsistencies in her discussion of his consultative report and explaining how she reached her decision, the ALJ provided ample support for electing to assign the opinion limited weight.

### B. Did the ALJ properly consider plaintiff's impairments or "cherry pick" the evidence under step two?

At step two of the evaluative process, the ALJ determined that plaintiff suffered from severe impairments of "borderline[] mood disorder, personality disorder, dysthymic disorder, and paranoid personality" and also suffered from non-severe impairments of "hypertension, obesity and diabetes mellitus." *Id.* at 16. Despite these findings, the ALJ determined at step three that plaintiff did not have "an impairment or combination of impairments" that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7

Docket 9, p. 20. She ultimately concluded that plaintiff's mental impairments imposed only "mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decomposition." *Id.* Plaintiff asserts two errors with regard to step two.

First, despite acknowledging that plaintiff had been diagnosed with the condition at various times throughout her medical history, the ALJ did not explicitly list bipolar disorder as either a severe or non-severe impairment. *Id.* at 16-17. This omission, says plaintiff, illustrates that the ALJ failed to consider bipolar disorder with psychotic features as a potential impairment, and this was error under *Stone v. Heckler* and SSR 96-8p. Docket 14, pp. 11-18. The Commissioner asserts that plaintiff's argument "reflects a misunderstanding of the purpose of the step-two analysis, the applicability of *Stone*, and the residual functional capacity assessment performed at step four." *Id.* at 12. Conceding that the ALJ did not expressly list "bipolar disorder" as an impairment, she nonetheless expressly considered the condition in her decision, discussing the various opinions in the record regarding the validity of such a diagnosis. Docket 15, pp 14-15.

The Commissioner urges that step two is "designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" Docket 15, pp. 12-13, quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). Further, "where the sequential evaluation process proceeds past step two, the Fifth Circuit has found no merit in Plaintiff's allegations of ALJ error in the application of the *Stone* standard." Docket 15, p. 13. The Commissioner says plaintiff's argument should be rejected because the ALJ "incorporated Plaintiff's paranoid personality features, and evaluated the functional consequences of all Plaintiff's mental impairments, [by] limiting Plaintiff to work

8

involving no interaction with the public and only occasional interaction with coworkers and supervisor." *Id.* at 14. Thus, the question before the court is whether electing not to include bipolar disorder as an explicit impairment was an error dictating that this case "must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106.

Because concluding an evaluation of a plaintiff's claim at Step Two of the sequential evaluation procedure is unusual, the court has pored over the medical records to satisfy itself that the ALJ's legal analysis was correct, and her decision was supported by substantial evidence. Upon doing so, the court concludes that the decision was, in fact, supported by substantial evidence. *Stone v. Heckler* involved the Fifth Circuit's concern that the Social Security Commissioner terminating claims at step two by misapplying the severity standard. *See generally* 752 F.2d 1099. For that reason, the Circuit declared that, "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. *Stone* emphasized that the severity determination is to be made based solely on medical factors, not on vocational factors. *See id.* n. 4 citing *Lofton v. Schweiker*, 653 F.2d 215, 217 (5th Cir. 1981); 20 C.F.R. 404.1529(d)(1), 416.929(d)(1). In other words, "[s]tep two is a threshold inquiry; [o]nly slight trivial impairments that would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience are not severe at this step." *Sheffield v. Comm'r of Social Sec.*, 513 Fed. Appx. 840, 841-42 (11th Cir. 2013). Thus, *Stone* solidified that the step two inquiry is a "*de minimis*" substantive requirement that should rarely be used to deny benefits altogether. *Stone*, 752 F.2d at 1106; *see also Garza v. Heckler*, 771 F.2d 871, 874 (5th Cir. 1985). The case established the doctrine that, "unless the correct standard is set forth by

9

reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used," the Circuit would assume that an incorrect standard has been applied to the severity requirement. *Stone*, 752 F.2d at 1106.

Despite the Fifth Circuit's stated directive that ALJs in the future must reference *Stone* or its standard in their opinions, it has since held that a simple failure to reference the standard may be harmless error where a claimant has been unable to show any functional limitations from her medical impairments. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Much of the basis for Commissioner's argument is essentially harmless error. The Commissioner asserts that although she did not explicitly list the impairment in her step two analysis, the ALJ "clearly considered" plaintiff's condition because of the impairments she did find and because she referenced bipolar disorder several times throughout her opinion. Docket 15, pp. 12-16. Having fully considered the evidence, the court finds that the ALJ did properly consider plaintiff's condition.

A thorough review of the ALJ's analysis reveals that rather than failing to consider the condition, the decision not to include bipolar disorder as a listed impairment reflects the ALJ's attempt to weigh *all* the evidence and encompass all of plaintiff's impairments. As noted, the ALJ's role is to weigh conflicts in the evidence; if there is substantial evidence to support the decision, the court must affirm even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617. Plaintiff's medical history reveals that for several years she has, without doubt, exhibited and suffered from various conditions related to her mental state. *See generally* Docket 9. Plaintiff's medical records also demonstrate that a common theme throughout her medical history has been relatively inconsistent diagnoses.

This particular assignment of error highlights the most glaring inconsistency from plaintiff's records—whether or not plaintiff does indeed suffer from bipolar disorder. For instance, even though plaintiff asserts that her bipolar disorder is well-established, medical records reveal that various medical professionals have debated whether plaintiff has bipolar disorder at all.[1] Because these opinions are so diverse, the ALJ found plaintiff suffers from more broadly worded severe impairments such as "borderline, mood disorder, personality disorder, dysthymic disorder, and paranoid personality" [Docket 9, p. 16] in an attempt to properly include all of plaintiff's conditions.

To substantiate her findings, the ALJ was sure to note these questions from the medical records regarding bipolar disorder specifically in her opinion. For instance, the ALJ noted that plaintiff had reported to Region III in May 2009 that she suffered from schizophrenia and a chemical balance, which the ALJ noted was "presumably bipolar" disorder. Docket 9, pp. 16-17. Additionally, the ALJ noted that Dr. Masur's notes from that visit reveal that though plaintiff had been accused of "having a chemical imbalance (presumably bipolar [disorder])," yet he saw no evidence of that when he examined her. *Id.* at 18. Also, though she elected not assign his opinion significant weight, the ALJ noted that Dr. Lane's consultative examination summary and conclusions revealed that he felt that while the plaintiff impressed upon him as having a psychotic disorder, he suggested "ruling out a Bipolar I Disorder, with Psychotic Features, Moderate Severity." Docket 9, pp. 18. And, finally, the ALJ elected to give Dr. Powers' opinion

---

[1] Docket 9, at 294-95 (Dr. Ali references that the plaintiff's mother informed the hospital that plaintiff had been diagnosed with bipolar many years ago."); *but cf.* 312-315 (Dr. James Lane's Axis I diagnoses was "Psychotic Disorder, NOS" and "Bipolar I Disorder, Recurrent, with Psychotic Features, Moderate Severity" among several other impairments however, he suggested a need for "ruling out" Bipolar I Disorder, meaning he felt the issue needed further investigation because there were questions about this diagnosis.); 330 (Dr. David Powers' psychiatric review consultant's notes indicate that though "bipolar disorder has been suggested," he felt that while "[s]ome mood problems are certainly possible . . . most of what is found here can be explained [as being] related to personality disturbance."); p. 353 (Dr. Louis Masur's progress notes from Region III Mental Health Center on May 1, 2009 notes that plaintiff "has been accused of being schizophrenic and having a chemical imbalance (presumably bipolar d/o) but I see no evidence of that today.").

11

significant weight who, within his consultant's notes reflected that he personally believed bipolar disorder was not the proper diagnosis and felt that most of plaintiff's issues could instead be attributed to "personality disturbance." *Id.* at 19.

Although the absence of bipolar disorder in the ALJ's impairments list may, standing alone, appear to suggest that the ALJ did not consider it at all, the court concludes that the decision read as a whole is instead indicative of the ALJ's attempt to weigh *all* the evidence and encompass all of plaintiff's impairments. Whether or not she listed bipolar disorder as an impairment, the ALJ nevertheless addressed and considered all the symptoms considered by the doctors and other medical providers who treated or evaluated plaintiff. The ALJ specifically listed the instances where the potential diagnosis was mentioned by any medical source and considered the limitations each medical source may have found, regardless of the cause of the limitation. Rather than failing to consider the possibility that plaintiff suffers from bipolar disorder, these references prove the ALJ fully considered plaintiff's conditions even though she ultimately found the evidence weighed in a manner unfavorable to plaintiff. *Id.* at 16-19. In fact, by finding more broad impairments than she may have otherwise, the ALJ attempted to account for the fact that the plaintiff's mood-related impairments are, at best, questionably bipolar disorder and may more likely remain undiagnosed. *Id.*

In her second argument regarding the ALJ's step two analysis, plaintiff asserts the ALJ "cherry picked" evidence to select only the evidence which supported a disability finding. Docket 14, pp. 19-20. Plaintiff claims that although "[t]he responsibility to determine the plaintiff's [RFC] belongs to the ALJ, . . . in making this determination [s]he must consider all the evidence in the record." Docket 14, p. 19-20; *Ripley v. Chater*, 67 F.3d 552. 557 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). In particular, the plaintiff claims "[t]he

ALJ had to 'cherry pick' in order to find the GAF of 60 and indicate [plaintiff] did not have any impairments any more severe than they were, but then she still found in the RFC that she had quite severe emotional difficulties." Docket 14, p. 19.

The Commissioner replies that plaintiff's claim on this score amounts to no more than a request that the court adopt plaintiff's interpretation of the evidence rather that the ALJ's. *Id.* at 15-16. The court finds that the ALJ did not "cherry pick" evidence and, further, that plaintiff has failed to prove she was prejudiced in any way as would be required by *Brock v. Chater*. Docket 9, pp. 15-16; *see also* 84 F.3d 726, 729 (5th Cir. 1996).

Conflicts in the evidence are for the Commissioner to decide; if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The plaintiff complains of the ALJ's specific mention of certain evidence, such as the "GAF of 60," to assert that the ALJ ignored other relevant evidence. Docket 14, p. 19. The court has found, however, that the ALJ considered the entire record, which included both favorable and unfavorable evidence; her decision was more than substantially justified. Docket 9, p. 16-20. Throughout her written decision, the ALJ acknowledged and discussed plaintiff's well-documented history of mental issues. *Id.* After doing so the ALJ provided ample support for her severe impairment findings, her credibility finding, and her determination that plaintiff could continue to work.[2]

In light of the evidence presented, the ALJ had sufficient evidence to determine plaintiff's impairments and to make the ultimate decision regarding disability. She reviewed the

---

[2] *See, e.g.* Docket 9, p. 18, 20 (relying on Dr. Lane's finding that despite her impairments, plaintiff was quite suspicious throughout her interview and was "not at all impaired in the area of performing routine, repetitive tasks," citing *id.* at 312). *See also id.* at 19 (relying on Dr. Powers finding that while "social difficulties will persist . . . [they] would not preclude routine work such as that done previously," citing *id.* at 330); i*d.* at 16-17 (The ALJ relied on Dr. Masur indicating that plaintiff "likely exaggerated symptoms," citing *id.* at 353), *id.* at 18 (relying on Dr. Cummings' belief that while the working diagnosis remained Schizoaffective disorder, the doctor "suspected non-compliance but had no way of knowing," citing *id*. at 491).

entire record, properly identified and accounted for the plaintiff's relevant impairments, and ultimately concluded that despite her impairments the plaintiff could perform work that existed in significant numbers in the national economy. Plaintiff essentially asks the court to re-weigh the evidence and adopt plaintiff's reasoning. This, court declines to do.

### C. Did the ALJ properly consider the testimony of plaintiff's friend?

Finally, plaintiff contends, in essence, that the manner in which the ALJ considered testimony provided by plaintiff's friend, Daphne Norton, resulted in a distortion of the information she provided. Docket 14, pp. 20-26. Ms. Norton submitted a Third Party Function report in September 2011 in which she detailed her knowledge of plaintiff's abilities and activities. Docket 9, pp. 162-67. The ALJ elected to grant the report "some weight" because it showed the claimant's activities were not as limited as plaintiff alleged. *Id.* at 22. Plaintiff asserts that this decision exhibits the ALJ's bias toward information that supported a finding of disability and "flies in the face of the entire concept of SSR 06-3p." Docket 14, p. 21.

SSR 06-03p provides guidance for the role which opinions and other evidence provided by sources who are not "acceptable medical sources" may play in the Commissioner's decision. The regulation says that evidence from "other sources," including non-medical sources such as friends *may* be useful in helping establish the severity of an individual's impairments and how they affect her ability to function. SSR 06-03p; 20 C.F.R §§ 404.1513(d), 416.913(d). Clearly, this regulation does not require an ALJ to adopt a friend's opinion or to accept the information offered in its entirety.

Here, the ALJ's interpretation of Ms. Norton's opinion was entirely reasonable and within her obligation to weigh the evidence. Ms. Norton reported that plaintiff gets her children off to school, cooks dinner, cleans her house, drives regularly, goes shopping for food and

14

clothes, pays bills, counts change, handles financial accounts and uses a checkbook. to find that plaintiff was not as limited as alleged. With respect to plaintiff's social interactions, Ms. Norton stated that plaintiff regularly talks on the phone, comes over with her children to visit her friend, and attends church regularly. *Id.* The ALJ referred to this information in reaching her decision that plaintiff was not as limited as she claimed. Docket 9, p. 22. The court has reviewed Ms. Norton's correspondence and finds that the SLJ's decision to give it some weight was fully justified. Nothing in the regulations required the ALJ to accept all of the information offered or not at all. The ALJ's RFC decision incorporated both the capabilities and most of the limitations which Ms. Norton described. That was her prerogative. Rather than committing error or picking and choosing evidence, the ALJ credited the portions of Ms. Norton's testimony which were consistent with the other evidence of record.

## V. CONCLUSION

After diligent review, the court concludes that the ALJ's decision was supported by substantial evidence and applied the proper legal standards and should be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this the 31st day of August, 2015.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE